353 F.2d 910
 J. L. AUSTIN, Administrator, C.T.A., of the Estate of Henry Vann, individually and as Agent for George W. Gillette, Marguerite B. Gillette and husband, George W. Gillette, Eliza B. Williamson, Lillian M. Bellamy, and Mary B. Barroll, Appellees,
v.
Cooper JACKSON, T. Eugene Tart, and James E. Wright, as Review Committee of the United States Department of Agriculture for Sampson County, North Carolina, Appellants.
 No. 9994.
 United States Court of Appeals Fourth Circuit.
 Argued November 4, 1965.
 Decided December 6, 1965.
 
 Florence Wagman Roisman, Atty., Dept. of Justice, (John W. Douglas, Asst. Atty. Gen., and Alan S. Rosenthal, Atty., Dept. of Justice, and Robert H. Cowen, U. S. Atty., on brief), for appellant.
 John V. Hunter, III, Raleigh, N. C. (Terry Sanford, Raleigh, N. C., and J. E. Tucker, New Bern, N. C., and Sanford, Cannon & Hunter, Raleigh, N. C., and Ward & Tucker, New Bern, N. C., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.
 J. SPENCER BELL, Circuit Judge:
 
 
 1
 This case involves the cancellation of flue cured tobacco allotments placed on the farm now owned by the appellees by persons whose original tobacco land had been taken by eminent domain. Basically the facts are as follows. The Bellamy heirs owned farms with allotments to produce 13.8 acres of tobacco under the Agricultural Adjustment Act. 7 U.S.C. §§ 1281-1393. The lands were taken by eminent domain proceedings for the erection of the Kerr Dam. Payments for the land by the Federal Government did not include payment for the value of the tobacco allotments. Though as a general rule allotments run with the land and may not be transferred from one farm to another, an exception is made for allotments attached to land which is taken by eminent domain. 7 U.S.C. § 1313(h).
 
 
 2
 By deed dated March 1, 1955, the heirs, through their agent Gillette, were conveyed the farm involved in this case from Henry Vann. The consideration for the transfer was a note for $35,000 made by the heirs to Vann. At the same time the heirs leased the land back to Vann for two years in return for Vann paying the taxes and insurance and completing three buildings which he had already started. On May 13, 1955, this deed was filed for recordation. Revenue stamps were never placed on the deed. On this same day tobacco allotments of the Bellamy heirs were transferred from the State Pool to the Vann farm. Prior to this date, on April 29, 1955, Gillette, who was a retired army engineer, had indicated to Vann that due to the fact that business required him to go abroad the heirs, who had anticipated that he would manage the farm, were considering selling the property. Vann offered to pay $49,000 (to cancel the note for $35,000 and pay $14,000 in cash) for the land and the allotments. At this time Vann gave Gillette checks for $14,000. Vann testified that Gillette was committed to refund the cash payment if the transaction was not completed. Nothing further was done until late 1956. By deed dated January 27, 1957, the Bellamy heirs conveyed the land back to Vann.
 
 
 3
 In 1958 the Sampson County Committee cancelled the division of Vann's farm and redetermined the 1955, 1956, 1957 and 1958 acreage allotments on the ground that the Bellamy heirs had not been owners of the land to which the allotments were transferred. On appeal, the Review Committee, after a hearing, upheld the County Committee's actions.
 
 
 4
 Pursuant to 7 U.S.C. § 1365, Vann sought review in the district court. The district court vacated the redetermination and remanded the case to the Review Committee holding that "the purported findings of facts made by the Review Committee are not sufficient in law to support the conclusions reached." We concur in this finding and further find that the Review Committee failed in its duty to render a reasoned opinion. "Courts ought not to have to speculate as to the basis for an administrative agency's conclusion." Northeast Airlines, Inc. v. CAB, 331 F.2d 579, 586 (1 Cir. 1964). Indeed to prevent this speculation the Administrative Procedure Act requires that "All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of * * * findings and conclusions, as well as the reasons or basis therefor, upon all material issues of fact, law, or discretion presented on the record." [Emphasis supplied.] 5 U.S.C.A. § 1007(b); see Burlington Truck Lines v. United States, 371 U.S. 156, 167, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). This requirement is especially important where the administrative tribunal is lacking in legal expertise. The Committee, which adopted verbatim the department's proposed findings and conclusions, was composed of three tobacco farmers. With regard to the more normal situation of an experienced body, the Supreme Court has stated:
 
 
 5
 "The administrative process will best be vindicated by clarity of its exercise. Since Congress has defined the authority of the Board and the procedure by which it must be asserted and has charged the federal courts with the duty of reviewing the Board's orders * * *, it will avoid needless litigation and make for effective and expeditious enforcement of the Board's order to require the Board to disclose the basis of its order. We do not intend to enter the province that belongs to the Board, nor do we do so. All we ask of the Board is to give clear indication that it had exercised its discretion with which Congress has empowered it." Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271 (1941).
 
 
 6
 The Review Committee's finding of facts recited the documentary facts which were not in dispute. It found dates of deeds and transactions. The first "conclusion" of the Review Committee, "that the actual transaction was the [a] sale * * * of 13.8 acres of flue cured tobacco allotment," ought properly to have been included in the finding of facts.
 
 
 7
 The second conclusion is a true conclusion. "[T]hat the deed dated March 1, 1955 * * * did not constitute a purchase of the acreage * * * within the meaning of Section 725.620 of the Flue-cured Tobacco Marketing Quota Regulations for the year 1955-56 Marketing Year." Putting aside the question of whether those regulations are applicable to this case we point out that the conclusion is supported by absolutely no reasoning. There is no indication of how this result was reached. It is unavailing that the department in the name of the Committee now brings forth reasons supporting the Review Committee's determination. For it is "a simple but fundamental rule of administrative law. * * * that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action." SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). Without any reason given for the Review Committee's conclusion that the initial purchase did not satisfy the statute this court has no choice but to remand. Even if proper reasons do exist from the facts to uphold the decision the court may not imply them. As in the case where administrative action cannot be upheld on the reasons the agency has assigned, the court will not state proper reasons and uphold but will remand the case to the agency. SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); Davis, Administrative Law § 16.14.
 
 
 8
 As was found by the district court, the findings of fact are not sufficient to support the conclusion. The essential element in determining the case is the specific intent of the Bellamy heirs at the time of the initial purchase. Even reading the first conclusion as a finding of fact there is no finding as to the intent at the time of purchase. There is only finding as to the total transaction. The district court ought to remand the case to the Review Committee, instructing them to find the facts of the initial transaction. Of course subsequent happenings might bear on their determination of the initial facts. There are several possible findings. First, the parties may have intended to perpetrate a fraud with the sole purpose of unlawfully transferring tobacco allotments. Second, the parties may have in good faith believed that the creation of a paper title was enough to allow the transfer of the tobacco allotments. Third, the heirs may have intended to sell the land after purchasing and placing the allotments on it, but at the time of purchase had formed no intention as to whom or when they would sell it. And fourth, there may have been intent to farm the property but Gillette's changed business requirements forced a change in plans necessitating resale of the farm. Until such findings are made as to the circumstances surrounding the initial purchase and these circumstances are related to the requirements of the statute the courts are not in a position to review the determination of the Review Committee. The focal point of the department's interest is naturally in its over-all program of limiting the production of tobacco in order to maintain the price, but the individual owners have a property right which should not be expropriated without due process of law.
 
 The decision of the district court is
 
 9
 Affirmed.