**Lois M. GRANT, Jamie P. Donnelly and Harold Wallace on behalf of themselves and all other similarly situated persons, Plaintiffs,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. No. 88–0921.**

United States District Court, M.D. Pennsylvania.

June 17, 1989.

---

Michael F. Brown, Stephenson & Brown, Harrisburg, Pa., Fred H. Hait, Griffie, Turo & Grell, Carlisle, Pa., Laurence E. Norton, II, Pennsylvania Legal Services Center, Peter Zurflieh, Central Pennsylvania Legal Services, Harrisburg, Pa., Louise O. Knight, Clement & Knight, Lewisburg, Pa., for plaintiffs.

James J. West, U.S. Atty., Bruce Brandler, Asst. U.S. Atty., Harrisburg, Pa., John R. Bolton, Asst. Atty. Gen., Sheila Lieber, Felicia L. Chambers, U.S. Dept. of Justice, Federal Programs Branch Civ. Div., Washington, D.C., for defendant.

## OPINION

MUIR, District Judge.

### I.  Introduction.

Once again we are presented with a case in which a claimant or claimants for Social Security disability benefits allege that Administrative Law Judge (ALJ) Russell Rowell is biased against disability claimants generally. *See, e.g., Tate v. Secretary of Health and Human Services,* No. 84–1495 (M.D.Pa. Orders Nos. 1, 2, and 3 of Aug. 3, 1988) (Muir, J.); *Wallace v. Sullivan,* No. 88–0295, 1989 WL 109098 (M.D.Pa. Mar. 20, 1989) (Muir, J.); *Schneck v. Bowen,* No. 88–0901, 1989 WL 109557 (M.D.Pa. Feb. 27, 1989) (Kosik, J.).  The Plaintiffs-claimants

assert in this case, as others have in the past, that because of ALJ Rowell's bias, they have been and will be denied fair Social Security disability claim hearings in violation of the Social Security Act and the due process clause of the Fifth Amendment to the United States Constitution. The undersigned has not been required in the past to reach the merits of whether ALJ Rowell is biased against disability claimants generally and, apparently, neither has any other member of this Court. For the reasons set forth in this opinion, this may be the case in which we are required to address the merits of whether ALJ Rowell is biased as alleged.

## II. Procedural and Factual History.

This action was commenced on June 17, 1988, when Lois M. Grant filed a complaint in which she named then-Secretary of Health and Human Services Otis R. Bowen, M.D., ("Secretary") as the sole Defendant. Grant brought this action pursuant to 42 U.S.C. § 405(g) seeking reversal of a final decision of the Secretary denying her benefits under the Social Security Disability Insurance Program (hereinafter "Title II"), established by Title II of the Social Security Act, 42 U.S.C. § 401 et seq. *See Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 2024, 90 L.Ed.2d 462 (1986). (The Federal government also provides disability benefits under the Supplemental Security Income Program (hereinafter "Title XVI"), established by Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. *Id.*) Grant predicated her claim for relief upon two theories: (1) the Secretary's decision was not supported by substantial evidence and was contrary to law and (2) ALJ Rowell, who presided over Grant's hearing and rendered a decision denying her application for disability benefits, was biased against her and against disability claimants generally, thus denying her a fair hearing in violation of the Social Security Act and the due process clause of the Fifth Amendment.

On August 12, 1988, a first amended complaint was filed by Grant, Jamie P. Donnelly, and Harold Wallace (hereinafter "named Plaintiffs") on behalf of themselves and a proposed class of individuals consisting of, generally speaking, each claimant for disability benefits under Title II or Title XVI who (1) had received an adverse decision concerning his or her claim from ALJ Rowell, (2) had his or her claim assigned to ALJ Rowell but had not yet received a decision from him, or (3) would in the future have his or her claim assigned to ALJ Rowell for a decision. (Because no class of Plaintiffs has yet been certified, we will hereinafter refer to all action taken by the named Plaintiffs, both on their own behalf and on behalf of the proposed class, as having been taken by the named Plaintiffs.) Then–Secretary Bowen is the sole Defendant named in the first amended complaint which asserts that we have jurisdiction over the claims pled pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The named Plaintiffs assert, with regard to themselves, that the Secretary's decisions that they are not disabled within the meaning of the Social Security Act are not supported by substantial evidence and are contrary to law. The named Plaintiffs also assert with regard to themselves and the members of the proposed class that ALJ Rowell is biased against disability claimants generally and as a result of his bias the named Plaintiffs and the members of the proposed class have been and will be denied fair hearings in violation of the Social Security Act and the due process clause of the Fifth Amendment. The named Plaintiffs request that we (1) reverse the decisions of the Secretary denying them disability benefits, (2) order that this action be maintained as a class action, (3) enter a declaratory judgment that ALJ Rowell is biased against claimants for Title II and Title XVI disability benefits and that his bias has deprived the named Plaintiffs and members of the proposed class of their right to a fair hearing in violation of the Social Security Act and the due process clause of the Fifth Amendment, and (4) enter a permanent injunction (4.1) requiring the Secretary to remand the cases of the named Plaintiffs and members of the proposed class for new hearings before administrative law judges other than ALJ Rowell and (4.2) forbidding the Secretary to assign ALJ Rowell in the future to any tasks

which involve the discretion to determine disability claims made pursuant to either Title II or Title XVI.

The Clerk of Court assigned the responsibility for this case to us but referred it to United States Magistrate Raymond J. Durkin for preliminary consideration. On September 28, 1988, the Secretary filed an answer to the named Plaintiffs' first amended complaint. On November 10, 1988, the named Plaintiffs filed a motion for class certification in which they requested that we certify the following class:

> All claimants for Social Security and/or SSI [Title II and/or Title XVI] disability benefits who have received, or will receive, an adverse decision from Administrative Law Judge (ALJ) Russell Rowell on or after January 1, 1985, and all disability claimants whose claims have been or will be assigned to ALJ Rowell for a decision.

(The proposed class specified in the named Plaintiffs' motion for class certification is similar, but not identical, to the proposed class set forth in the named Plaintiffs' first amended complaint.) The named Plaintiffs filed on November 17, 1988, a motion to compel the Secretary to answer interrogatories and produce documents. The discovery requests which underlie the named Plaintiffs' motion to compel seek information concerning ALJ Rowell's alleged bias. The Secretary filed on December 20, 1988, a motion pursuant to Fed.R.Civ.P. 12(c) for partial judgment on the pleadings requesting that we dismiss the allegation of bias pled by the named Plaintiffs on their own behalf and on behalf of members of the proposed class. On December 23, 1988, the Secretary filed a motion for a protective order seeking an order preventing the named Plaintiffs from conducting further discovery in this case.

Magistrate Durkin filed a report on March 20, 1989, in which he recommended (1) that the named Plaintiffs' motion for class certification be denied, (2) that the Secretary's "motion for partial summary judgment on the issue of bias" be granted, (3) that the named Plaintiffs' motion to compel discovery be dismissed as moot, and (4) that the Secretary's motion for a protective order be dismissed as moot. Magistrate Durkin first analyzed whether the Secretary was entitled to judgment on the issue of bias. After concluding that the Secretary was entitled to judgment in his favor on the issue of bias, Magistrate Durkin reasoned that there was no justification for certifying the proposed class and there was no reason to permit the named Plaintiffs to conduct any more discovery.

The named Plaintiffs filed objections to Magistrate Durkin's report and the recommendations contained therein. By order of May 4, 1989, we, among other things, substituted Louis W. Sullivan, M.D., for Otis R. Bowen, M.D., as the Defendant pursuant to Fed.R.Civ.P. 25(d)(1).

### III. Discussion.

The question before us is whether the Secretary is entitled to judgment in his favor with regard to the allegation of bias pled by the named Plaintiffs on their own behalf and on behalf of the members of the proposed class.

A. Should the Secretary's Motion for Partial Judgment on the Pleadings be Treated as one for Summary Judgment.

The Secretary filed on December 20, 1988, a motion pursuant to Fed.R.Civ.P. 12(c) for partial judgment on the pleadings requesting that we dismiss the allegation of bias pled by the named Plaintiffs on their own behalf and on behalf of the members of the proposed class. Also on December 20, 1988, the Secretary filed a document entitled "Memorandum in Support of Defendant's Motion for Partial Judgment on the Pleadings and in Opposition to Plaintiffs' Motion for Class Certification." Appended to the aforementioned "Memorandum" were (1) an affidavit by Michael Francis Brown, Esq., one of the attorneys of record for the named Plaintiffs in this case which was apparently part of the record in *Tate v. Bowen,* No. 84–1495 (M.D. Pa.), (2) an October 6, 1988, Magistrate's report in *Dehoff v. Bowen,* No. 88–0255 (M.D.Pa.) (Smyser, U.S. Magistrate), (3) an order in *Wallace v. Bowen,* No. 88–0295

(M.D.Pa. Nov. 23, 1988) (Smyser, U.S. Magistrate), and (4) three orders in *Tate v. Secretary of Health and Human Services*, No. 84–1495 (M.D.Pa. Orders Nos. 1, 2, and 3 of Aug. 3, 1988). The named Plaintiffs filed two affidavits and one declaration under penalty of perjury in support of their brief in opposition to the Secretary's "Memorandum."

Rule 12(c) of the Federal Rules of Civil Procedure provides as follows:

> *Motion for Judgment on the Pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The affidavits, declaration under penalty of perjury, and other documents filed with the Court in support of and in opposition to the Secretary's motion for partial judgment on the pleadings are "matters outside the pleadings." *See* Fed.R.Civ.P. 7(a), 10(c). Because we intend to rely upon some of these matters outside the pleadings in ruling upon the Secretary's motion for partial judgment on the pleadings, we are obliged to treat this motion as one for summary judgment. Fed.R.Civ.P. 12(c).

Ordinarily, when a district court converts a motion for judgment on the pleadings into a motion for summary judgment, it should provide notice of its intention to do so and either allow the parties an opportunity to submit materials admissible in a summary judgment proceeding or schedule a hearing. *See Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir.1989). However, because we have decided for the reasons expressed below not to grant summary judgment in favor of the Secretary on the issue of bias based upon the record as it currently exists, we do not need to provide notice of our intention to convert the Secretary's motion for partial judgment on the pleadings into a motion for summary judgment and we do not need to permit the parties to submit additional materials or schedule a hearing before ruling upon this motion. *See Rose v. Bartle*, 871 F.2d at 341, 342. Because the Secretary was the first party to file matters outside the pleadings addressed to his motion for partial judgment on the pleadings, he cannot rightfully complain if we consider matters outside the pleadings in deciding not to grant judgment in his favor on the issue of bias.

**B. The Summary Judgment Standard.**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The United States Supreme Court has stated with regard to motions for summary judgment that a material fact is one which might affect the outcome of the suit under the relevant substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Supreme Court also stated in *Anderson v. Liberty Lobby, Inc.* that a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* 106 S.Ct. at 2510.

**C. Have the Named Plaintiffs or the Members of the Proposed Class Waived Their Bias Claim.**

Magistrate Durkin implied, but did not explicitly state, in his report that in his view the named Plaintiffs and the members of the proposed class have waived their bias claim. *See* Magistrate's report at 8–11. The named Plaintiffs object to this implication. *See* the named Plaintiffs' brief in support of their objections to the Magistrate's report at 31–35. In order to analyze whether the named Plaintiffs and the members of the proposed class have waived their bias claim, it is helpful to

review briefly the administrative process used in determining whether an individual is entitled to disability benefits under either Title II or Title XVI of the Social Security Act.

The determination whether an individual is disabled is made initially by a state agency acting under the authority and control of the Secretary. [Citations omitted]. . . .

The disappointed claimant is afforded a three-stage administrative review process beginning with *de novo* reconsideration by the state of the initial determination. [Citations omitted]. If a claimant is dissatisfied with the state agency's decision on reconsideration, he is entitled to a hearing by an administrative law judge (ALJ) within [the Social Security Administration's] Office of Hearings and Appeals. [Citations omitted].

If the ALJ's decision is adverse to the claimant, the claimant may then seek review by the Appeals Council. [Citations omitted]. Proceeding through these three stages exhausts the claimant's administrative remedies. Following the determination at each stage, a disappointed claimant is notified that he must proceed to the next stage within 60 days of notice of the action taken or the decision will be considered binding. [Citations omitted]. Thereafter, he may seek judicial review in federal district court, pursuant to 42 U.S.C. § 405(g). See 42 U.S.C. §§ 421(d), 1383(c)(3); [additional citations omitted].

*Bowen v. City of New York,* 106 S.Ct. at 2025–2026.

The case of *Hummel v. Heckler,* 736 F.2d 91 (3d Cir.1984), is instructive with regard to whether a claimant has waived his or her bias claims in a Social Security case. Ms. Hummel's application for disability benefits under Title XVI of the Social Security Act was denied by the Secretary. After the Secretary's final decision Hummel became aware of a case pending in the United States District Court for the District of Columbia in which administrative law judges who worked for the Social Security Administration sought injunctive relief concerning the Secretary's "Bellmon Review" program. These administrative law judges alleged that the "Bellmon Review" program was designed to discourage them from awarding benefits to claimants. After commencing an action in the district court pursuant to 42 U.S.C. § 405(g) for review of the denial of benefits, Hummel served upon the Secretary interrogatories and requests for production of documents which sought to determine whether or not the administrative law judge who conducted her hearing had prior thereto been subject to a "Bellmon Review" and, if so, to obtain information about it. The Secretary filed objections to Hummel's requested discovery on the ground that the information sought was irrelevant. In response to the Secretary's objections, Hummel filed motions to compel discovery. Without ruling upon Hummel's motions to compel discovery, the district court granted the Secretary's motion for summary judgment.

The Court of Appeals reversed the district court. First, the Court of Appeals pointed out that the Social Security Administration has provided a means for raising at the administrative level a claim that an administrative law judge is biased. *See* 20 C.F.R. § 416.1440. The Court of Appeals then assumed, without deciding, that had Hummel been aware of the facts giving rise to her claim of bias at the time of her hearing before the administrative law judge, she would be deemed to have waived her bias claim by failing to raise it in the manner specified in 20 C.F.R. § 416.1440. The Court of Appeals noted that the Secretary did not dispute on appeal that Hummel had raised the bias claim as soon as practicable after she had reasonable cause to believe that grounds existed for disqualification of the administrative law judge.

Section 405(g) of 42 U.S.C. provides for judicial review of final decisions of the Secretary concerning applications for both Title II and Title XVI disability benefits. Section 405(g) also provides,

The court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the

failure to incorporate such evidence into the record in a prior proceeding. . . .

Relying upon section 405(g) the Court of Appeals in *Hummel v. Heckler* stated that while district courts have no factfinding role in Social Security review cases, the Social Security Act contemplates that matters not included in the administrative record may be presented to a district court for the purpose of establishing the need for an order directing the taking of additional evidence before the Secretary. 736 F.2d at 93. The Court of Appeals further stated that because of the absence of a discovery mechanism during the agency proceedings in Social Security cases, in some instances facts with respect to the fairness of the agency proceedings can be developed only in the district court. *Id.* The Court of Appeals concluded that in Hummel's case, facts concerning the fairness of Hummel's administrative hearing could be developed only in the district court and that Hummel had demonstrated good cause for the failure to incorporate the evidence of bias into the administrative record. Therefore, Hummel was entitled to conduct discovery and thereafter present evidence to the district court in an attempt to convince the district court that a remand to the Secretary for the taking of additional evidence was appropriate. *See id.* at 93, 95.

■ The above discussion of *Hummel v. Heckler* indicates that it stands for at least the following two propositions: First, if a Social Security disability claimant raises a bias claim concerning the administrative law judge who conducted his or her hearing as soon as practicable after the claimant had reasonable cause to believe that grounds existed for disqualification of the administrative law judge, then the claimant cannot be deemed to have waived the bias claim even though the claimant did not raise the bias claim until he or she sought judicial review of the Secretary's final decision. Second, if a claimant who has preserved his or her bias claim regarding the administrative law judge who conducted his or her hearing does not raise the bias claim until judicial review of the Secretary's decision is sought, the district court

may permit the claimant to maintain the action in the district court for the purpose of conducting discovery on the bias claim; the district court need not automatically dismiss the action and require the claimant to proceed first at the administrative level without the benefit of discovery.

■ With regard to the named Plaintiffs and the members of the proposed class waiving their bias claims, Magistrate Durkin stated the following in his report:

[P]laintiffs have indicated that Rowell's alleged bias is manifested by his credibility determinations. (See Doc. No. 4, Am. Compl., ¶¶ 22, 37 and 50). They claim that Rowell uses "inflammatory language and a number of unlawful techniques" to discredit plaintiffs. (Doc. No. 27, Aff. of Hait, Counsel for Wallace). However, even if such inflammatory language was not manifested at the hearing, once the plaintiffs receive the administrative law judge's adverse decision where his or her credibility was allegedly unfairly discredited through inflammatory language or unlawful techniques, the plaintiffs would have had notice of Rowell's alleged bias which should then have been raised to the Appeals Council for consideration. If the inflammatory language and unlawful techniques were not apparent to plaintiffs from the conduct of the hearing or the resulting hearing decision, or both, then it is difficult to see any claim of bias.

We respectfully disagree with Magistrate Durkin's reasoning in the above passage. Louise O. Knight, Esq., who filed the original complaint in this case on behalf of Plaintiff Grant individually, submitted the following declaration under penalty of perjury in opposition to the Secretary's motion for partial judgment on the pleadings:

I, LOUISE O. KNIGHT, being duly sworn according to law, depose and say as follows:

1. I am attorney of record in this case for Plaintiff, Lois M. Grant.

2. I became attorney for Lois M. Grant with respect to her present Social Security claim shortly before the time of her initial hearing before Administrative

Law Judge Russell Rowell, in December 1986.

3. Prior to the time of Plaintiff Grant's case I had never handled a Social Security case as an attorney, and I had no prior knowledge of ALJ Judge [sic] Russell Rowell nor of any of his decisions on Social Security claims.

4. At no time during the course of the hearing proceedings nor through the time of the appeal to the Appeals Council was I aware of the existence of a claim of bias on the part of ALJ Rowell towards Plaintiff Grant nor towards Social Security claimants in general.

5. I first became aware of a possible claim of bias when on May 13, 1988 I had a telephone conversation with Peter B. Macky, Esquire, an attorney with Susquehanna Legal Services in Sunbury, Pennsylvania. I had called Attorney Macky to obtain his advice and assistance with respect to filing a civil suit in federal court on behalf of Lois M. Grant in connection with denial of her Social Security claim. Attorney Macky has had extensive experience with Social Security cases and in the past had generously provided advice to other attorneys whose experience in the area of Social Security law was limited. Attorney Macky asked me the name of the Administrative Law Judge who had heard my client's Social Security claim. Upon learning the name, Attorney Macky advised me that Pennsylvania Legal Services was involved in several cases where a claim of bias was being lodged against ALJ Rowell. He referred me to another Pennsylvania Legal Services Office which in turn referred me to Peter Zurfleih, Esquire, an attorney of record in this case, who for the first time during a phone conversation on May 16, 1988 made me aware of a serious claim of bias existing against ALJ Rowell.

6. Accordingly, the earliest point in time that I could raise a claim of bias against ALJ Rowell was at the time of the preparation and filing of a Complaint in this case on June 17, 1988.

In accordance with 28 U.S.C. 1746, I hereby declare and affirm under penalty of perjury that the above statements are true and correct to the best of my knowledge, information, and belief.

Attorney Knight does not allege in her declaration under penalty of perjury that ALJ Rowell uses "inflammatory language and a number of unlawful techniques" to discredit claimants; the original complaint in this case does not so allege, and the first amended complaint in this case does not so allege. Rather, the named Plaintiffs have alleged since the beginning that "ALJ Rowell is inclined in every disability case to deny benefits; he uses his discretion to determine credibility to effect this bias against claimants." Original complaint, ¶ 16; *see also* named Plaintiffs' first amended complaint, ¶¶ 22, 37, 50. The contention that ALJ Rowell uses "inflammatory language and a number of unlawful techniques" to discredit claimants has never been a central part of the named Plaintiffs' case. The clear thrust of the named Plaintiffs' case has always been that if the testimony of the claimant and various other witnesses supported a finding of disability while the testimony of different witnesses supported a finding of no disability, ALJ Rowell would use his discretion to find that the claimant and the witnesses supporting the claimant were not credible thereby enabling him to conclude that the claimant was not disabled and therefore not entitled to disability benefits. It is most unlikely that ALJ Rowell's alleged manipulation of credibility determinations would manifest itself at hearings or in his written decisions in a way which would give a claimant notice of ALJ Rowell's alleged bias against disability claimants generally. In addition, the Secretary has not pointed out any "inflammatory language" or "unlawful techniques" which appear in either the hearing transcripts or the written decisions of the named Plaintiffs in this case which should have put one or more of the named Plaintiffs on notice of ALJ Rowell's alleged bias. Based on the above, we cannot say that Plaintiff Grant did not raise the bias claim as soon as practicable after she had reasonable cause to believe the grounds for disqualification of ALJ Rowell existed.

It is very likely that there are at least some members of the proposed class who at the time they received their final decision from the Secretary with regard to their application for disability benefits were as ignorant about the grounds supporting an allegation of bias against ALJ Rowell as were Plaintiff Grant and her attorney, Louise O. Knight, at the time Grant received her final decision from the Secretary. Based upon the above discussion concerning whether Grant waived her bias claim, we are of the view that it is likely that there are at least some members of the proposed class who have not waived their bias claims.

The Secretary has alleged that the named Plaintiffs advanced various arguments and theories about their claims before Magistrate Durkin and now that Magistrate Durkin has recommended that the pending motions be decided in the Secretary's favor, the named Plaintiffs have completely changed their arguments and theories in support of their claims. For example, the Secretary asserts that the named Plaintiffs originally alleged that credibility determinations were the crux of this case, but now they are trying to back away from this claim by asserting that unfair use of credibility determinations as to one claimant would not be sufficient to put the claimant on notice of ALJ Rowell's alleged bias but that had a claimant been able to observe dozens of ALJ Rowell's hearings or read dozens of his written decisions, this may have put a claimant on notice of ALJ Rowell's alleged bias because the repetition of his techniques for determining credibility and the patterns of his credibility determinations may have alerted a claimant to Rowell's alleged bias. It is our view that the statement by the named Plaintiffs, that were a claimant to observe dozens of ALJ Rowell's hearings or read dozens of his written opinions only then might a claimant be on notice of his alleged bias, does not constitute a complete change of the named Plaintiffs' theory of this case. Rather, this statement is merely an attempt to explain why each of the named Plaintiffs and the members of the proposed class could not have known about ALJ Rowell's alleged bias simply from attending his or her own hearing and reading ALJ Rowell's decision in his or her own case. Further, this explanation by the named Plaintiffs seems to be in response to a line of reasoning in Magistrate Durkin's report.

D. May the Named Plaintiffs Raise in this Court on their own Behalf and on Behalf of the Members of the Proposed Class the Allegation of Bias Even Though this Allegation was Not Raised at the Administrative Level.

■ Magistrate Durkin states in his report that because there is an administrative procedure for testing alleged bias of an administrative law judge and because the named Plaintiffs did not avail themselves of this procedure, there has been no final decision by the Secretary on the question of bias. Magistrate Durkin further asserts that the named Plaintiffs do not allege that raising the issue of bias at the administrative level would have been futile. Magistrate Durkin therefore concludes that because there has been no final decision by the Secretary on the issue of bias and because there is no allegation that it would have been futile to raise the bias issue at the administrative level, we do not have authority to consider the issue of bias in this action. *See* Magistrate Durkin's report at 11. We do not agree with Magistrate Durkin's reasoning in this regard.

For the reasons expressed above, at least Plaintiff Grant and probably some of the members of the proposed class have not waived their bias claims. Therefore, absent some unforeseen argument by the Secretary regarding his motion for a protective order, they are entitled to proceed in this Court, at a minimum, to conduct discovery with regard to the bias issue and to present evidence to this Court for the purpose of attempting to convince us of the need for an order directing the taking of additional evidence before the Secretary on the issue of bias. *See Hummel v. Heckler,* 736 F.2d at 93–95. The fact that the named Plaintiffs and the members of the proposed class have not raised the issue of

bias at the administrative level, have not received a final decision from the Secretary on the issue of bias, and have not alleged that it would be futile to raise the bias issue at the administrative level does not preclude the named Plaintiffs and the members of the proposed class from maintaining this action in this Court at least for the purpose of conducting discovery on the bias issue and seeking an order directing that this case be remanded to the Secretary for the taking of additional evidence on the bias issue.

The issue for us to decide then becomes who may proceed in this Court at least for purposes of discovery concerning the bias issue and in order to seek a remand to the Secretary to take additional evidence on the bias issue.

E. May the Proposed Class Include Claimants who Failed to Bring a Court Action within 60 Days After the Final Decision of the Secretary on their Individual Applications for Benefits and whose 60–Day Period for Filing a Court Action Expired Prior to the Commencement of this Action.

The class of Plaintiffs on whose behalf the named Plaintiffs wish to prosecute this action include claimants who failed to bring a court action within 60 days of the final decision of the Secretary on their individual applications for benefits and whose 60–day period for filing a court action expired prior to the commencement of this action. Magistrate Durkin's recommendation that the named Plaintiffs' motion for class certification be denied by necessity includes the recommendation that we forbid the named Plaintiffs to prosecute this action on behalf of, among others, individuals who failed to bring a court action within 60 days after the final decision of the Secretary on their individual applications for benefits and whose 60–day period for filing a court action expired prior to the commencement of this action. The named Plaintiffs object to Magistrate Durkin's recommendation concerning their motion for class certification and they specifically address the propriety of including within the proposed class individuals who failed to bring a court action within 60 days after the final decision of the Secretary on their individual applications for benefits and whose 60–day period for filing a court action expired prior to the commencement of this action. We now turn to this aspect of the named Plaintiffs' motion for class certification.

Section 405(g) of 42 U.S.C. requires that any individual seeking review of a final decision of the Secretary concerning an application for disability benefits under either Title II or Title XVI must commence a civil action in the appropriate United States District Court within 60 days after the mailing to him or her of notice of such decision. *See also Bowen v. City of New York*, 106 S.Ct. at 2029. The Supreme Court stated in *Bowen v. City of New York* that the 60–day requirement set forth in 42 U.S.C. § 405(g) is not jurisdictional but rather constitutes a statute of limitations and that this statute of limitations can be equitably tolled in appropriate circumstances. 106 S.Ct. at 2029, 2030. In *Bowen v. City of New York*, the district court found, following a 7–day trial, that from 1978 until at least early 1983, the Social Security Administration followed a covert, illegal policy that presumed that mentally disabled claimants who did not meet or equal the listing of impairments contained in the Social Security regulations necessarily retained sufficient residual functional capacity to do at least "unskilled work, which would preclude an award of benefits. The district court concluded that as a result of this policy, these claimants did not receive the realistic, individual assessment of their ability to engage in substantial gainful activity which the Social Security Act and its regulations require. *See* 106 S.Ct. at 2026–2027. On appeal to the Court of Appeals for the Second Circuit and before the Supreme Court, the Secretary did not challenge the district court's findings of fact or ruling on the merits. The Supreme Court stated that based upon the facts of the case, the equities in favor of tolling the 60–day statute of limitations for commencing a court action pursuant to 42 U.S.C.

§ 405(g) were "compelling." 106 S.Ct. at 2030. The Supreme Court quoted approvingly the following passage from the opinion of the Court of Appeals:

> All of the class members who permitted their administrative or judicial remedies to expire were entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. Though they knew of the denial or loss of benefits, they did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge. Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action. Since in this case the full extent of the Government's clandestine policy was uncovered only in the course of this litigation, all class members may pursue this action notwithstanding the 60–day requirement.

106 S.Ct. at 2030 (quoting *City of New York v. Heckler*, 742 F.2d 729, 738 (2d Cir.1984) (citations omitted)).

We are of the view that the facts alleged in the case before us are sufficiently similar to those facts in *Bowen v. City of New York* which the Supreme Court found warranted equitable tolling of the 60–day statute of limitations in 42 U.S.C. § 405(g) to warrant equitable tolling of this statute of limitations in this case. Two considerations are particularly important to us in making our assessment that equitable tolling of the 60–day limitation period is proper in this case. First, the Social Security Act and the regulations promulgated pursuant thereto require that a claimant receive an administrative hearing before an unbiased and impartial administrative law judge. *See Hummel v. Heckler*, 736 F.2d 91, 93–94 (3d Cir.1984); 20 C.F.R. § 416.1440; *cf. Richardson v. Perales*, 402 U.S. 389, 399, 401, 91 S.Ct. 1420, 1426, 1427, 28 L.Ed.2d 842 (1971). In Social Security disability claim hearings, the administrative law judge has an affirmative obligation to assist the claimant in developing the facts. *Hummel v. Heckler*, 736 F.2d at 95. If the named Plaintiffs' allegation that ALJ Rowell is biased against disability claimants generally is true, the named Plaintiffs and the members of the proposed class would have suffered a violation of their right accorded by the Social Security Act and the Social Security regulations to a hearing before an unbiased and impartial administrative law judge. The Secretary does not argue that the named Plaintiffs' allegation of bias against ALJ Rowell fails to state a violation of the Social Security Act. Second, if the named Plaintiffs' allegation regarding ALJ Rowell is true, there would have been no way for at least Plaintiff Grant and many if not all members of the proposed class to know that a violation of their rights had occurred.

For the above reasons, we are of the view that tolling of the 60–day limitations period contained in 42 U.S.C. § 405(g) is appropriate and that claimants who failed to bring a court action within 60 days of the final decision of the Secretary in their individual case and whose 60–day period for commencing a court action expired prior to the filing of this action should not be excluded from the proposed class.

F. May the Class of Plaintiffs on whose Behalf the Named Plaintiffs Wish to Prosecute this Action Include Claimants who had not Exhausted their Administrative Remedies at the Time this Action was Commenced.

The named Plaintiffs wish to prosecute this action on behalf of, among others, claimants who had not exhausted their administrative remedies at the time this suit was commenced.

The claimants who had not exhausted their administrative remedies at the time this suit was commenced may be subdivided into two groups: (1) claimants who were unable to exhaust their administrative remedies at the time this case was filed because the 60–day time limits for administrative appeals had expired, barring further access to the administrative appeals

process and (2) claimants who still had time to exhaust their administrative remedies at the time this suit was commenced.

The Supreme Court in *Bowen v. City of New York* concluded that for claimants involved in that case who were unable to exhaust their administrative remedies because of the expiration of the 60–day time limits for administrative appeals exhaustion should be excused for the same reasons requiring tolling of the 60–day statute of limitations for seeking review of the Secretary's final decision in the district court. 106 S.Ct. at 2031. Because we have already concluded that it is proper in this case to toll the 60–day statute of limitations, we are also of the view that exhaustion should be excused for those claimants who were unable to exhaust their administrative remedies at the time this case was filed because of the expiration of the 60–day time limits for administrative appeals.

■ We now turn to those claimants who still had time to exhaust their administrative remedies at the time this suit was commenced. The first criterion a claimant must meet in order to be excused from the exhaustion requirement is that the claimant must have presented a claim for benefits to the Secretary. *Bowen v. City of New York,* 106 S.Ct. at 2031 (citing *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)). The named Plaintiffs allege in their first amended complaint that each had filed an application for disability benefits under either or both Title II or Title XVI prior to the commencement of this action. Also, the named Plaintiffs have apparently limited the proposed class to individuals who had already filed applications for Title II or Title XVI disability benefits at the time this case was filed.

The next criterion which must be met in order for the Court to excuse a class of disability claimants from the exhaustion requirement is that the claims raised in the claimants' lawsuit in the district court must be collateral to the claims for benefits that class members had presented administratively. *See Bowen v. City of New York,* 106 S.Ct. at 2031. Magistrate Durkin states the following at page 5 of his report:

"[E]xhaustion can be waived where it is *futile* or where the claimant has presented a wholly *collateral, colorable constitutional claim."* (Emphasis in original.) Magistrate Durkin does not include a citation to indicate from where this proposition comes. We are of the view that there is no requirement that the collateral claim be a constitutional one. The Supreme Court in *Bowen v. City of New York* noticeably omits to state that a collateral claim must be a constitutional one in order for the exhaustion requirement to be excused. *See* 106 S.Ct. at 2031. The Supreme Court also did not say that the claims in that suit were constitutional claims, even though they were found to be collateral and sufficient to warrant excusing the exhaustion requirement. *See id.* Still further, the district court in that case stated, "Plaintiffs also allege that the Secretary's policy violates plaintiff class members' due process rights. The finding that the policy is contrary to the social security statute, obviates the need to reach the constitutional issue." *City of New York v. Heckler,* 578 F.Supp. at 1125. The district court was affirmed both by the Court of Appeals and the Supreme Court. *See* 106 S.Ct. at 2028–2029.

The Supreme Court in *Bowen v. City of New York* concluded that the claims raised in that lawsuit were collateral to the claims for benefits that class members had presented at the administrative level. *Id.* We are of the view that the claims that ALJ Rowell is biased are as collateral to the claims for benefits that the named Plaintiffs and the members of the proposed class have presented administratively as were the claims in *Bowen v. City of New York* in comparison to the claims for benefits presented to the Secretary by the class members involved in that case.

The third criterion which must be met in order for a court to excuse a class of disability claimants from the exhaustion requirement is that the claimants would have to be irreparably injured were the exhaustion requirement enforced against them. *Id.* at 2031–2032. The Supreme Court in *Bowen v. City of New York* concluded that the claimants in that case would be irrepa-

rably injured were the exhaustion requirement enforced against them at the time the class action suit was filed. *Id.* at 2032. The Supreme Court relied upon the unchallenged finding of the district court that class members not only were denied the benefits they were seeking, but " '[t]he ordeal of having to go through the administrative appeal process may trigger a severe medical setback. Many persons have been hospitalized due to the trauma of having disability benefits cut off. Interim benefits will not adequately protect Plaintiffs from this harm. Nor will ultimate success if they manage to pursue their appeals.' " *Id.* at 2032 (quoting *City of New York v. Heckler*, 578 F.Supp. 1109, 1118 (E.D.N.Y. 1984)). After comparing the facts in *Bowen v. City of New York* to the facts alleged in the case before us and noting the similarities between the facts in the former and those alleged in the latter, we are unable to say that those members of the proposed class in the case before us who have not exhausted their administrative remedies would be unable to show that they would be irreparably injured were we to now require them to exhaust their administrative remedies. Therefore, we may not refuse at this juncture to permit this group of claimants to become part of the proposed class in this case. The named Plaintiffs may introduce evidence concerning the irreparable harm issue at the hearing concerning their motion for class certification.

One other factor weighs heavily in favor of excusing from the exhaustion requirement those members of the proposed class who still had time to exhaust their administrative remedies at the time this suit was commenced. As the Court of Appeals recognized in *Hummel v. Heckler*, the absence of a discovery mechanism during agency proceedings in Social Security disability cases may in some instances mean that facts with respect to the fairness of the proceedings can be developed only in the district court. We believe that it is necessary for the named Plaintiffs and the members of the proposed class to conduct discovery in order to attempt to make out a case concerning their bias claims. Were

we to require those members of the proposed class who had time to exhaust their administrative remedies at the time this suit was filed to exhaust their administrative remedies, they would be unable to raise effectively the bias issue at the administrative level. It does not seem proper to us to require these claimants to exhaust their administrative remedies simply in order to get back to the district court so that they may take advantage of the discovery procedures which are permitted in the district court.

### G. May We Try in this Court the Bias Claims of the Named Plaintiffs and the Members of the Proposed Class.

Now that we have concluded that at least some, and maybe all, of the named Plaintiffs and the members of the proposed class may maintain this action in this Court at least in order to conduct discovery with regard to their bias claims and for the purpose of establishing the need for an order directing the taking of additional evidence before the Secretary on the bias claims, there is one more exhaustion issue that needs to be addressed: May we try in this Court the bias claims of the named Plaintiffs and the proposed class members as was the claim that the Social Security Administration was following a covert, illegal policy concerning mentally disabled claimants so tried in *Bowen v. City of New York, see* 106 S.Ct. at 2026–2027, or are we obliged to remand this action to the Secretary for factfinding if we determine that there is good cause for such a remand as *Hummel v. Heckler* suggests must be done, *see* 736 F.2d at 93, 94. It is our view that whether we should try the bias claims alleged in this case or whether we should remand these claims to the Secretary for factfinding may depend in large part upon whether we certify a class of Plaintiffs in this action and if so, what size of class we certify. Because of this view we think it is advisable to defer deciding whether to try the bias claims or remand them to the Secretary for factfinding until we rule upon the named Plaintiffs' motion for class certification.

## IV. Conclusion.

Based upon the above discussion, we decline to follow the recommendations in Magistrate Durkin's report.

An appropriate order will be entered.